**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

DONALD RAY SMITH, JR., )
 )
                Petitioner,     )
 )
           v.                   )      1:13CV606
 )
MICHAEL DAVIS,[1]               )
 )
                Respondent.     )

**<u>MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE</u>**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On June 14, 2012, in the Superior Court of Guilford County, Petitioner pled guilty, pursuant to <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), to felonious habitual misdemeanor assault, and pled guilty to attaining habitual felon status, in cases 11 CRS 23219 and 10 CRS 23583. (<u>See</u> Docket Entry 1, ¶¶ 1, 2, 4-6; <u>see also</u> Docket Entries 7-2 (transcript of plea form), 7-3 (plea hearing transcript).)[2] The trial court sentenced

---

[1] The Petition originally named Judy L. Brandon, Superintendent of Caswell Correctional Center, as Respondent. (<u>See</u> Docket Entry 1 at 1.) On August 26, 2014, prison authorities transferred Petitioner to Davidson Correctional Center. (<u>See</u> http://www.doc.state.nc.us/offenders/, select Offender Public Search and enter Petitioner's name.) Michael Davis currently serves as Superintendent of Davidson Correctional Center. (<u>See</u> http://www.doc.state.nc.us/news/2004/releases/davis_davidson.htm (last visited May 11, 2015).) Consistent with Rule 2(a) of the Rules Governing Section 2254 Cases and by operation of Federal Rule of Civil Procedure 25(d) (applicable to this proceeding pursuant to Rule 12 of the Rules Governing Section 2254 Cases), Michael Davis now appears as Respondent.

[2] Although Petitioner states in the Petition that he "ple[]d guilty to habitual misdemeanor assault only" (Docket Entry 1 at 1), the transcript of plea form and plea hearing transcript reflect that he entered an <u>Alford</u> plea to habitual misdemeanor assault and pled guilty to attaining habitual felon status (<u>see</u> Docket Entry 7-2 at 2; Docket Entry 7-3 at 17, 27, 31).

Petitioner in accordance with his plea arrangement to 87 to 114 months' imprisonment. (See Docket Entry 1, ¶ 3; see also Docket Entry 7-2 at 4, Docket Entry 7-3 at 49-50; Docket Entry 7-4 (judgment and commitment forms).)[3] Petitioner did not pursue a direct appeal.

Petitioner thereafter filed a motion for appropriate relief ("MAR") with the state trial court (Docket Entry 7-7; see Docket Entry 1, ¶¶ 10, 11(a)(1)), which that court denied (Docket Entry 7-8). Petitioner sought review of his MAR's denial by filing a certiorari petition in the North Carolina Court of Appeals (Docket Entry 7-9; see Docket Entry 1, ¶ 11(a)(1)), which that court denied (Docket Entry 7-11).

Petitioner subsequently submitted his instant Petition to this Court. (Docket Entry 1.) Respondent moved for summary judgment on the merits (Docket Entry 6) and Petitioner responded in opposition (Docket Entries 9, 10).

## Grounds for Relief

Petitioner raises four grounds for relief in his Petition: (1) the state violated Petitioner's Fifth Amendment rights against double jeopardy by charging him with substantially the same crime as the assault on a female charge that the state dismissed on July 15, 2011 (Docket Entry 1 at 5; see also Docket Entry 10 at 2-8); (2) the state trial court denied Petitioner equal protection of the laws and fairness under the Fourteenth

---

[3] Pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

Amendment by failing to answer Petitioner's three requests to explain how the state could charge him with substantially the same crime as the assault on a female charge that the state dismissed on July 15, 2011 (Docket Entry 1 at 6; see also Docket Entry 10 at 9); (3) the state trial court's threats to send the case to trial pressured and coerced Petitioner into taking a plea and rendered his plea involuntary (Docket Entry 1 at 8; see also Docket Entry 10 at 10); and (4) Petitioner's trial counsel provided ineffective assistance by answering "Yes" to the trial court's question as to whether Petitioner wanted to plead guilty and by failing to answer Petitioner's question about the state's dismissal of the assault on a female charge (Docket Entry 1 at 10; see also Docket Entry 10 at 11).

## Habeas Standards

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to [this] [C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see also 28 U.S.C. §

2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").

When a petitioner has exhausted state remedies, this Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court [or] . . . confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite to that reached by [the United States Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409-11

(explaining that "unreasonable" does not mean merely "incorrect" or "erroneous").

## Discussion

I. Ground One

In Petitioner's first ground for relief, he contends that the state violated his rights against double jeopardy by charging him with (and, upon his <u>Alford</u> plea, convicting him of) felonious habitual misdemeanor assault, which constitutes substantially the same crime based on the same facts as the misdemeanor assault on a female charge that the state dismissed with prejudice on July 15, 2011. (<u>See</u> Docket Entry 1 at 5, 15; <u>see also</u> Docket Entry 10 at 2-8.) Petitioner attached a document to his Petition summarizing the details and disposition of his misdemeanor assault on a female charge (Docket Entry 1 at 15), and argues that, under the constitutional guarantee against double jeopardy, the prosecutor's dismissal "with prejudice" of that charge bars the state from prosecuting Petitioner for other substantially similar crimes based on the same facts, citing <u>Grady v. Corbin</u>, 495 U.S. 508 (1990), and <u>Brown v. Ohio</u>, 432 U.S. 161, 165 (1977).

(Docket Entry 1 at 5, 15; see Docket Entry 10 at 2.)[4] Petitioner's argument lacks merit.

As an initial matter, the parties disagree whether Petitioner exhausted his state remedies with respect to this ground for relief by sufficiently presenting the substance of the claim to the MAR court. (See Docket Entry 7 at 4-6, Docket Entry 10 at 4-8.) Respondent contends that "a review of Petitioner's MAR shows that although he mentioned the dismissal of his misdemeanor assault on a female charge, and argued his subsequent

---

[4] In Petitioner's response in opposition to the instant summary judgment motion, he argues, for the first time, that the state "punished" him for the September 17, 2010, misdemeanor assault on a female charge in case number 10 CR 88962 (notwithstanding its dismissal) by ordering him "to participate in the Domestic Violence Intervention Program ["DVIP"]," which Petitioner claims he "successfully completed." (Docket Entry 10 at 3-5 (citing Docket Entries 10-7 (certificate of completion of DVIP), 10-8 (receipts for Petitioner's payments for the DVIP), 10-10 (argument of Petitioner's counsel at time of sentencing regarding Petitioner's participation in DVIP), 10-12 (order that Petitioner participate in the DVIP)).) That argument fails for two reasons. First, a summary judgment response "is not the proper place to raise new facts. Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner must set forth in his petition 'the facts supporting each ground' for relief." Velasquez v. Gipson, No. SA CV 12-1078(JSL), 2013 WL 3381371, at *9 n.4 (C.D. Cal. July 8, 2013) (unpublished) (emphasis added); see also Quackenbush v. Tilton, No. 07CV413W(WMC), 2008 WL 183710, at *6 (S.D. Cal. Jan. 18, 2008) (unpublished) ("Facts must be stated, *in the petition*, with sufficient detail to enable the Court to determine, from the face of the petition, whether further habeas corpus review is warranted. Moreover, the allegations should be sufficiently specific to permit the respondent to assert appropriate objections and defenses." (internal citations omitted) (emphasis in original)). Second, and more significantly, the order directing Petitioner to participate in the DVIP does not constitute evidence that the state "punished" Petitioner for the misdemeanor assault on a female charge in case 10 CR 88962. The document Petitioner attached to his response to summary judgment consists of pages three and four of a Domestic Violence Order of Protection (Form AOC-CV-306), signed by Guilford County District Court Judge Thomas Jarrell on September 22, 2010, which prohibited Petitioner from possessing or purchasing a firearm, and ordered him to not contact the victim and to stay away from the victim's residence and place of employment, as well as to complete the DVIP. (Docket Entry 10-12.) Petitioner neglected to attach pages one and two of Judge Jarrell's order, which likely would have reflected a different case number than Petitioner's misdemeanor assault on a female charge (case 10 CR 88962). (See id.)

-6-

Case 1:13-cv-00606-LCB-LPA   Document 11   Filed 05/19/15   Page 6 of 19

charge contained the same elements, he did not squarely raise a double jeopardy claim," citing <u>Duncan v. Henry</u>, 513 U.S. 364 (1995), and <u>Mallory v. Smith</u>, 27 F.3d 991, 994-95 (4th Cir. 1994). (Docket Entry 7 at 4.) In response, Petitioner maintains the sufficiency of the following language in his MAR to adequately place his double jeopardy claim before the MAR court: "I tried very hard to understand the plea but was just not sure if the plea was lawful because the charge that I plead to had been dismissed in some of the charges that have the same element [sic] from beginning to end." (Docket Entry 10 at 4; <u>see also</u> Docket Entry 10-2 at 3.) Petitioner urges the Court to liberally construe his pro se MAR to find sufficient exhaustion. (<u>See</u> <u>id.</u> at 5-7.)[5]

"For a claim to be exhausted, 'both the operative facts and the controlling legal principles must be presented to the state court.'" <u>Winston v. Kelly</u>, 592 F.3d 535, 549 (4th Cir. 2010) (quoting <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997)); <u>see also</u> <u>Jones v. Sussex I State Prison</u>, 591 F.3d 707, 712-13 (4th Cir. 2010) (observing that, to exhaust a claim, a "prisoner must fairly present his claim in each appropriate state court,"

---

[5] Petitioner argues that he adequately presented his double jeopardy claim to the state courts by relying on facts and arguments that he included in his certiorari petition to the North Carolina Court of Appeals seeking review of his MAR's denial. (<u>See</u> Docket Entry 10 at 6-7.) However, that argument fails because raising a claim for the first time in a discretionary petition to a state appellate court does not suffice to exhaust state remedies. <u>See</u> <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989); <u>cf.</u> <u>Felton v. Barnett</u>, 912 F.2d 92, 94-95 (4th Cir. 1990) (certiorari petition under North Carolina appellate procedure constitutes discretionary petition and denial does not amount to adjudication of merits but merely discretionary refusal to hear case).

which requires "more than scatter[ing] some makeshift needles in the haystack of the state court record," but instead obligates the prisoner to make the "substance of the claim evident, such that both the operative facts <u>and the controlling legal principles</u> are presented to the state court" (internal brackets, citations, and quotation marks omitted and emphasis added)).

Here, Petitioner arguably included the operative facts regarding his double jeopardy claim to the MAR court (i.e., dismissal of a prior charge with the same elements as the current charge), albeit in one brief sentence. (<u>See</u> Docket Entry 10-2 at 3.) However, Petitioner did so in the context of urging the unlawful nature of his plea. (<u>See</u> <u>id.</u>) Indeed, his entire MAR focused on the issue of whether he knowingly and voluntarily entered his <u>Alford</u> plea to felonious habitual misdemeanor assault, rather than on issues of double jeopardy. (Docket Entry 10-2.)[6] Moreover, Petitioner did not cite any state or federal cases that would have the apprised the MAR court that he intended to raise a federal double jeopardy claim. <u>See</u> <u>Baldwin v. Reese</u>, 541 U.S. 27, 33 (2004) ("The petition provides no citation of any case that might have alerted the court to the alleged federal nature of the claim."). Accordingly, Petitioner did not, even under a liberal construction, present any controlling legal principles to the MAR court regarding his double jeopardy claim

---

[6] The MAR court likewise interpreted Petitioner's parallel claim as one challenging the knowing and voluntary character of his plea, as evidenced by its order denying the MAR. (Docket Entry 10-9.)

and, therefore, he has failed to exhaust that claim. Nevertheless, the Court may deny this unexhausted claim on the merits, 28 U.S.C. § 2254(b)(2).

Petitioner's Ground One fails on its merits for the principal reason that jeopardy never attached with respect to the misdemeanor assault on a female charge in case 10 CR 88962. Although Petitioner contends the state dismissed that charge "with prejudice" (Docket Entry 1 at 5), Petitioner's own evidence reflects that the "prosecutor enter[ed a] dismissal" because Petitioner had "been indicted [for felony] assault [and] habitual felon out of the same indictment" (id. at 15). The state's voluntary dismissal of a charge because of a subsequent indictment does not equate to a dismissal "with prejudice" of that charge, much less an acquittal on the merits.

More significantly, even if, prior to trial, the trial court had dismissed the misdemeanor assault charge with prejudice, jeopardy would not have attached, as the state had not yet empaneled and sworn a jury, nor had Petitioner yet waived his right to a jury trial. As explained by the United States Supreme Court:

> [T]he Court has consistently adhered to the view that jeopardy does not attach until a defendant is 'put to trial before the trier of the facts, whether the trier be a jury or a judge.' United States v. Jorn, 400 U.S. 470, 479 (1971). This is by no means a mere technicality, nor is it a 'rigid, mechanical' rule. It is, of course, like most legal rules, an attempt to impart content to an abstraction.
>
> When a criminal prosecution is terminated prior to trial, an accused is often spared much of the expense,

> delay, strain, and embarrassment which attend a trial. See Green v. United States, 355 U.S. 184, 187—88 (1957); Jorn, 400 U.S. at 479. Although an accused may raise defenses or objections before trial which are 'capable of determination without the trial of the general issue,' Fed. R. Crim. P. 12(b)(1), and although he must raise certain other defenses or objections before trial, Fed. R. Crim. P. 12(b)(2), in neither case is he 'subjected to the hazards of trial and possible conviction.' Green, 355 U.S. at 187. . . . Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.' Kepner v. United States, 195 U.S. 100, 133 (1904); see Price v. Georgia, 398 U.S. 323, 329 (1970). Without risk of a determination of guilt, jeopardy does not attach, and further prosecution [does not] constitute[] double jeopardy.

Serfass v. United States, 420 U.S. 377, 391-92 (1975) (parallel citations omitted and citations adjusted to match format of this Recommendation); see also United States v. Cooper, No. 94-5310, 77 F.3d 471 (table), 1996 WL 67171, at *2-5 (4th Cir. Feb. 15, 1996) (unpublished) (rejecting argument that jeopardy attached when one count of indictment dismissed with prejudice pre-trial where "no jury had been empaneled or sworn, nor had [the petitioner] waived his right to a jury trial"); United States v. Hawes, 774 F. Supp. 965, 969 (E.D.N.C. 1991) (holding that "[a] pretrial dismissal of an indictment or count within an indictment does not invoke the double jeopardy clause because jeopardy cannot attach until a jury is sworn on such charges"). As jeopardy had not yet attached at the time the state dismissed the misdemeanor assault charge in case 10 CR 88962, Petitioner's subsequent indictment for felony habitual misdemeanor assault did not violate Petitioner's rights against double jeopardy.

-10-

Case 1:13-cv-00606-LCB-LPA   Document 11   Filed 05/19/15   Page 10 of 19

In sum, Ground One fails to entitle Petitioner to habeas relief.

II. Ground Two

In Ground Two, Petitioner claims that the trial court violated his rights to "equal protection of the laws and fairness" under the Fourteenth Amendment by failing to answer Petitioner's multiple requests to explain why his felony habitual misdemeanor assault charge did not constitute double jeopardy. (Docket Entry 1 at 6; see also Docket Entry 10 at 9.)[7] This claim warrants no habeas relief.

"[R]epresentations of the defendant, [and] his lawyer . . . at . . . a [plea] hearing as well as any findings made by the judge accepting the plea constitute a formidable barrier in subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "In the absence of clear and convincing evidence to the contrary, [a petitioner] must be bound by what he said at the time of the plea." Little v. Allsbrook, 731 F.2d 238, 239 n.2 (4th Cir. 1984).

The transcript of the plea hearing in this case belies Petitioner's claim regarding the trial court's alleged failure to

---

[7] Petitioner arguably raised the substance of Ground Two in his MAR, albeit without mention of either "equal protection" or "fairness." (Docket Entry 7-7 at 3 ("[The] judge . . . was in oppose [sic] to letting me say where I was lacking in understand [sic]."); id. ("I honestly think that the judge . . . was not professional about me been [sic] heard with the concerns that I needed understand [sic] on."); id. ("[T]he judge did not present themself [sic] according [sic] and took away my rights to be heard by not allowing me to ask questions.").) However, given the undersigned's recommendation that Ground Two lacks merit, such Ground would similarly fail if the Court evaluated the MAR court's denial of Petitioner's parallel claim under the deferential standard of review required by 28 U.S.C. § 2254(d).

-11-

address Petitioner's concerns regarding double jeopardy. (Docket Entry 9-3.) During the plea colloquoy, Petitioner stated, "I haven't had the clearance [sic] that I necessarily need according to what I'm pleading to. . . . It's just the fact that what's being offered to me according to the offenses – some of the offenses were dismissed and the – my lawyer has really tried to explain it to me." (Id. at 14.) Shortly thereafter, Petitioner remarked, "The part that I don't understand is the fact that if I'm being charged and if I'm pleading guilty to a habitual misdemeanor, and you're dismissing the assault, I don't understand how the habitual misdemeanor is created from the assault. The habitual misdemeanor never could have been placed on me if the assault wasn't there. And now to say that the assault is dismissed, I don't understand it." (Id. at 20-21.)

In response, although the trial court declined to explain the elements of felony misdemeanor habitual assault, noting "That's the function of your attorney, sir" (id. at 21), the trial court permitted Petitioner's counsel to address the court on the matter (id.). Petitioner's counsel then advised the trial court that he had discussed the elements of the charges with Petitioner on two prior occasions and that Petitioner had indicated he understood the elements. (Id.) At that point, Petitioner's counsel again explained, on the record, the elements of felony habitual misdemeanor assault and how that charge differs from misdemeanor assault on a female:

> On this charge of felonious habitual misdemeanor assault, you're charged with assaulting [the victim], causing a laceration to her lip and bruises on her body. You have been charged with having two prior assaults. And the earlier of these convictions did not occur 15 years prior to the date of the current violation. And those two are marked. And I have the certified copies of those two prior convictions.
>
> And you're charged with this assault on [the victim] causing physical injury. And we discussed that, the laceration on her lip. There was blood on her body. Two of her teeth were knocked loose.
>
> And so those are the elements of felonious habitual misdemeanor assault. And that's a substantive charge. Misdemeanor assault on a female that would be dismissed pursuant to the plea is something different. And this is the substantive charge.
>
> . . .
>
> So I have gone over this with him, Your Honor. And we discussed, you know, what would happen if we tried this case, and the witnesses and everything else.

(Id. at 23-24.) The trial court then re-asked the question whether Petitioner understood the nature of the charges against him, to which Petitioner answered, "Yes, sir." (Id. at 24.) Petitioner's sworn statement, after an on-the-record explanation by his counsel, that he understood the nature of the charges against him precludes his instant habeas claim.

Accordingly, Ground Two fails on the merits.

III. Ground Three

Via Ground Three, Petitioner contends that the trial court violated due process by threatening to send his case to trial and thereby coercing Petitioner to plead guilty. (See Docket Entry 1 at 8; see also Docket Entry 10 at 10.) That contention falls short.

-13-

Petitioner raised the substance of Ground Three in his MAR (Docket Entry 7-7), and the MAR court denied that parallel claim on the merits as follows:

> [Petitioner] now claims he did not understand his plea arrangement and that he was coerced into acceptance under pressure of having to go to trial to adjudicate the charges lodged against him. The Court construes this argument as being a Due Process violation argument.
>
> [Petitioner's] plea agreement is plain. There is no reason why [Petitioner] should misunderstand it in light of the abundant time he had to confer with his attorney. Moreover, [Petitioner] has been found guilty of ten class H or class I felonies as well as twenty-two class A-1 or 1 misdemeanors in the past; four of those crimes were assaults. He should be well aware of the law on Habitual Felon and Habitual Assault at this point. In light of these facts, the Court is of the opinion that [Petitioner] understood his plea arrangement and that he was not coerced.

(Docket Entry 7-8 at 2).

In light of that adjudication on the merits, Section 2254(d)'s highly deferential standard governs this Court's review of Petitioner's instant parallel claim and the Court thus must consider whether the MAR court contradicted or unreasonably applied clearly established federal law.[8] As discussed above in the context of Ground Two, the "representations of the defendant, [and] his lawyer . . . at . . . a [plea] hearing as well as any findings made by the judge accepting the plea constitute a formidable barrier in subsequent collateral proceedings." Blackledge, 431 U.S. at 73-74. "In the absence of clear and

---

[8] Petitioner does not contend that the MAR court relied on any unreasonably determined facts. (See Docket Entry 2 at 8: Docket Entry 10 at 10.)

-14-

convincing evidence to the contrary, [a petitioner] must be bound by what he said at the time of the plea." Little, 731 F.2d at 239 n.2.

Here, Petitioner's claim that the trial court coerced his guilty pleas contradicts both the transcript of plea form, signed by Petitioner under oath (see Docket Entry 7-2 at 4), and his sworn testimony at the plea hearing (see Docket Entry 7-3 at 4-32, 49, 50). A review of the plea hearing transcript reveals that, when Petitioner indicated he did not understand the elements of the charges against him, the trial judge informed him that he could not accept Petitioner's guilty plea under those circumstances, and would set the matter for trial. (Id. at 19-22.) Petitioner then reaffirmed his desire to accept the plea arrangement and, as discussed above in the context of Ground Two, trial counsel's on-the-record explanation of the elements of the charges ensued, followed by Petitioner's sworn statement that he did in fact understand the nature of the charges against him. (Id. at 22-24.) Quite simply, the colloquoy does not reveal any threats, coercion, or pressure by the trial court to induce guilty pleas by Petitioner.

Moreover, Petitioner swore that no one promised him anything or threatened him in any way to cause him to enter the pleas against his wishes, and that he entered the pleas of his own free will, fully understanding his actions. (Docket Entry 7-2 at 4; see also Docket Entry 7-3 at 24, 29-30.) Petitioner further indicated that he did not have any questions about the plea

colloquy or about anything else connected to his case. (Id.; Docket Entry 7-3 at 30, 32.) Petitioner's trial counsel and the prosecutor each certified that the transcript of plea form correctly stated the terms and conditions of the plea arrangement and that Petitioner had agreed to those terms. (Id.)

In light of these admissions under oath, Petitioner's conclusory and unsupported statements in his Petition that the trial court coerced his pleas (Docket Entry 1 at 8) fall far short of the "clear and convincing evidence" necessary for this Court to disregard his sworn and unambiguous statements, and those of his counsel and the prosecutor, to the contrary at the plea hearing. Allsbrook, 731 F.2d at 239 n.2.

Thus, the MAR court neither unreasonably applied nor contradicted clearly established federal law by denying Petitioner's parallel claim, and Ground Three fails to entitle Petitioner to relief.

IV. Ground Four

Finally, in Ground Four, Petitioner alleges that his trial counsel provided ineffective assistance by answering "Yes" on two or more occasions when the trial court asked whether Petitioner wished to plead guilty and by failing to answer Petitioner's questions about double jeopardy. (Docket Entry 1 at 10; see also Docket Entry 10 at 11.) Ground Four fails on its merits.[9]

---

[9] Respondent maintains that Petitioner "raised the substance of his current ineffectiveness claim, albeit without specifically stating 'ineffective assistance of counsel'" in his MAR. (Docket Entry 7 at 14.) It does not appear that Petitioner's allegations in his MAR fairly presented to the MAR court both the operative facts and the controlling law of his instant ineffective assistance

-16-

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687-94 (1984). To demonstrate prejudice in the context of a guilty plea, Petitioner must show a reasonable probability that, but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial. See Hill v. Lockhart, 474 U.S. 52, 58-59 (1985); Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007). Petitioner cannot make that showing.

Even assuming, arguendo, that Petitioner's trial counsel represented to the trial court that Petitioner wished to plead guilty without Petitioner's agreement or consent to do so (see Docket Entry 7-3 at 3), Petitioner cannot show prejudice arising from his counsel's representations. Petitioner, on multiple occasions after his trial counsel's representations, also stated to the trial court, under oath, that he wished to plead guilty (see id. at 4 (Petitioner's affirmation), 7-8, 14-15, 26-27, 28-29), and signed the transcript of plea form, under oath, indicating he wished to plead guilty (see Docket Entry 7-2 at 4;

claim, Winston, 592 F.3d at 549. (See Docket Entry 7-7 at 3 ("[M]y lawyer . . . was in oppose [sic] to letting me say where I was lacking understand [sic]."); id. ("[M]y lawyer . . . was not professional about me been [sic] heard with the concerns that I needed understand [sic] on."); id. ("[M]y lawyer . . . did not present themself [sic] according [sic] and took away my rights to be heard by not allowing me to ask questions.").) The MAR court's order denying Petitioner's MAR indicates that court did not interpret Petitioner's MAR to raise an ineffective assistance claim. (See Docket Entry 7-8.) Nevertheless, the Court may deny an unexhausted claim on its merits. See 28 U.S.C. § 2254(b)(2).

-17-

see also Docket Entry 7-3 at 32). Thus, Petitioner cannot show a reasonable probability that, but for his trial counsel's representations to the trial court, he would not have pled guilty and would have gone to trial. See Strickland, 466 U.S. at 697 ("[T]here is no reason . . . to address both components of the [performance and prejudice] inquiry if the defendant makes an insufficient showing on one.").

Similarly, as discussed above in the context of Ground Two, the plea hearing transcript directly contradicts Petitioner's claim that his trial counsel failed to answer Petitioner's questions about his double jeopardy concerns. (See Docket Entry 7-3 at 22-24 (trial counsel's on-the-record explanation of charges), 30 (Petitioner's subsequent denial, under oath, that he had any questions in connection with his pleas).) Simply put, Petitioner cannot show that his trial counsel's conduct at the plea hearing fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 697 ("[T]here is no reason . . . to address both components of the [performance and prejudice] inquiry if the defendant makes an insufficient showing on one.").

In short, Ground Four warrants no habeas relief.

## **Conclusion**

Petitioner has not shown entitlement to relief.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 6) be granted, that the Petition (Docket Entry 1) be denied, and that this action be dismissed without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 19, 2015

-19-

Case 1:13-cv-00606-LCB-LPA   Document 11   Filed 05/19/15   Page 19 of 19